[File No. 7269]

H. J. McGUCKIN, Respondent, v. ARNOLD WOLSKY,
Alice Wolsky, Albert Green, also known as Albert E. Green
and M. E. Grasswick, Defendants. (Defendant Green—Appellant).

(53 NW2d 852)

Opinion filed May 27, 1952.  Rehearing denied June 6, 1952

*Bangert & Bangert,* for appellant.
*Clarence G. Mead,* for respondent.

SATHRE, J.  This is an action brought by the plaintiff H. J.
McGuckin against the defendants Arnold Wolsky and Alice
Wolsky, as makers, and M. E. Grasswick and Albert Green as
endorsers of a promissory note in the sum of $700.00.

The complaint alleges that on or about the 5th day of October
1948, at Enderlin, North Dakota the defendants Arnold Wolsky
and Alice Wolsky, made their promissory note in writing,
dated on that day, whereby they promised to pay to the order
of Albert Green $700.00 on the 1st day of November, 1949 with

interest at 6% per annum; that the defendant Albert Green, the payee in said note thereafter and before the maturity, endorsed and delivered said note to the defendant M. E. Grasswick for value received, and guaranteed the payment of said note at maturity or at any time thereafter, signing said endorsement as Albert E. Green; that the defendant M. E. Grasswick thereafter and before maturity, and before commencement of this action delivered said note to the plaintiff for value received, and guaranteed payment of said note at maturity or at any time thereafter; that the plaintiff is the owner and holder of said note; that at maturity said note was duly presented for payment and payment demanded but that it was not paid. Judgment was prayed for accordingly.

The defendants Arnold and Alice Wolsky and M. E. Grasswick appear to have defaulted.

The defendant Albert Green answers separately and admits the execution and delivery to him of said note and that he endorsed said note to the defendant M. E. Grasswick, but alleges that he did not guarantee payment of said note; that he endorsed said note solely for the purpose of transferring title thereof to the said M. E. Grasswick and for no other purpose, and that the delivery thereof to Grasswick was entirely without recourse; that if the defendant Grasswick endorsed and delivered said note to the plaintiff and represented that the same was guaranteed by the defendant Green, such representation was false, fraudulent and untrue and that the defendant Grasswick negotiated, transferred and delivered said note to the plaintiff contrary to the terms under which he accepted it from the defendant Green. At the trial the note with endorsements was introduced in evidence as plaintiff's Exhibit 1.

The defendant Green attempted to introduce oral testimony that his endorsement to Grasswick was merely for the purpose of transferring the title and was without recourse; that when the transfer was made to Grasswick it was agreed that Green was in no manner liable as guarantor; that Grasswick would not transfer the note, or if he did he would explain the endorsement.

Plaintiff objected to this testimony on the ground that it was

an attempt to vary the terms of a written agreement by parole evidence and the trial court sustained the objection. After several unsuccessful attempts to introduce such oral testimony defendant Green made the following offer of proof:

"MR. BANGERT: At this time the defendant Green offers to prove the following facts: That sometime about—prior to October—sometime about October 5, 1948, the defendant M. E. Grasswick, who has defaulted in this matter, attempted to sell and did sell Mr. Green some real estate. Part of the consideration for that real estate was the note, Plaintiff's Exhibit 1. That it was understood between Grasswick and Green that the note was delivered to him and that Green was not—in fact, refused to guarantee the payment; that the indorsement, "Pay to the order of M. E. Grasswick. Albert E. Green", was not a guarantee of the note, that it merely acted as a transfer of the title to the note, and that it in no manner made Mr. Green liable; that Mr. Grasswick stated that he would not transfer the note, and if he did he would explain the indorsement, the second indorsement, and explain that that took the place of the printed indorsement on the back. And we offer to prove further that Mr. McGuckin at the time he took this note knew, or had reason to believe, that there was something wrong with the indorsement, that if he had not deliberately closed his eyes to making inquiry of Mr. Green, he could have inquired of Mr. Green just as readily, or perhaps a little more readily, as the other inquiry that he made, to determine whether Mr. Green had signed it; and that the note was indorsed and transferred by Mr. Grasswick in violation of the agreement when it was taken, and that constitutes a fraud on Mr. Green, and that will carry to Mr. McGuckin as well as the man who committed the fraud.

"We maintain that the slightest inquiry by Mr. McGuckin would have disclosed the condition upon which the note was indorsed and delivered.

"MR. MEAD: Your Honor, I will oppose this offer of evidence for the simple reason that he did inquire at the very bank at at which the transaction took place and he received definite information there that the note was absolutely good and guaranteed by Mr. Green. How they expect to connect Mr. Mc-

Guckin with any knowledge is beyond my knowledge. I don't know by what witnesses or by what testimony they expect to connect Mr. McGuckin with any knowledge of any agreement between Mr. Grasswick and Mr. Green as to restricting the indorsement on that note. The note speaks for itself. McGuckin took the note, went to the bank, went to Mr. Bangert's office, Mr. Bangert was not in there, and not having anything to do with the issuance of the note probably wouldn't have known anything about it anyway, but the bank told him the note was good. The fact that he didn't go to Mr. Green is immaterial. He didn't have to. The note is complete on its face and he didn't have to see Mr. Green."

At the close of the case the plaintiff made a motion for a directed verdict in his favor and against the defendant Albert E. Green upon all of the issues. The motion was granted and judgment was entered accordingly.

The defendant Albert E. Green appealed from the judgment. Numerous specifications of error are assigned based upon the trial court's ruling in excluding testimony of the defendant Green as to the circumstances in connection with his endorsement of the note to M. E. Grasswick; but they are all included in and may be considered under the court's ruling excluding the defendant Green's offer of proof.

The defendant Green contends that his endorsement to Grasswick was irregular and unusual in form and of such character as to put the plaintiff on inquiry as to the circumstances under which it was made; that in failing to make such inquiry, plaintiff was negligent as a matter of law to such an extent as to destroy his claim that he was an innocent purchaser for value without notice.

The question to be determined is therefore whether under the record and the applicable statutes the plaintiff is a holder in due course.

The undisputed facts establish that the note in suit was executed and delivered by Arnold Wolsky and Alice Wolsky to the defendant Albert Green; that Albert Green endorsed the note to M. E. Grasswick before maturity as part payment for land purchased for Grasswick; and endorsed it as follows:

"Pay to the order of M. E. Grasswick, Albert E. Green." Before maturity Grasswick sold and transferred the note to the plaintiff McGuckin for $710.00 and endorsed it in blank. Thereafter and on or about October 20, 1949, the plaintiff wrote the defendant Arnold Wolsky and Albert Green that he was the owner and holder of the note and demanded payment thereof, and that payment was refused.

Section 41-0404 NDRC 1943, Negotiable Instruments, enumerates the different Kinds of Endorsements:

"An endorsement may be either special or in blank; and it also may be either restrictive or qualified, or conditional."

Section 41-0405 NDRC 1943, defines special endorsements:

"A special endorsement specifies the person to whom, or to whose order, the instrument is to be payable; and the endorsement of such endorsee is necessary to the further negotiation of the instrument. An endorsement in blank specifies no endorsee, and an instrument so endorsed is payable to bearer, and may be negotiated by delivery."

There is nothing unusual in the endorsement by Green to Grasswick. It is in form a special endorsement and directs payment of the note to the order of Grasswick. It does not limit the rights of the endorsee thereunder. Grasswick in turn endorsed the note in blank to the plaintiff before maturity for valuable consideration. The understanding or agreement if any, between Green and Grasswick was not binding on the plaintiff since he had no knowledge thereof and was not a party thereto, and consequently his rights as a holder in due course could not be affected thereby.

"Negotiable Instruments Act Sec. 34 expressly provides that a special indorsement specifies the person to whom, or to whose order, the instrument is to be payable; and the indorsement of such indorsee is necessary to the further negotiation of the instrument, but this provision does not prescribe an exclusive manner by which a transfer may be made, as shown infra. Sec. 226. As defined in the cases, many of which cite the Negotiable Instruments Act, an indorsement in full, usually called a special indorsement, is one which mentioned the name of the person in

whose favor it is made, and to whom or to whose order the bill or note is to be paid. Thus an indorsement, 'Pay to A,' 'Pay to A or order,' or 'Pay to the order of A,' with the signature of the indorser, is an indorsement in full to A." 10 CJS, Sec 214, page 700.

"It is expressly provided by the Negotiable Instrument Act that one who signs otherwise than as maker, drawer, or acceptor is deemed to be an indorser 'unless he clearly indicates by appropriate words his intention to be bound in some other capacity.' It follows that a person other than the payee may sign his name on the back of a note, so as to be liable other than as indorser by adding a memorandum showing his intention to be bound in some other capacity. He may, by appropriate expression of intention, become liable as a guarantor or surety. It is however, necessary that the intention to be bound other than as an indorser be clearly indicated." 10 CJS Sec 39b, page 470.

Section 41–0604 NDRC 1943, Neg. Inst. defines the obligations of endorser:

"A person placing his signature upon an instrument otherwise than as maker, drawer, or acceptor, is deemed to be an endorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity."

Under a statute identical with section 41–0604 supra, the Supreme Court of Wisconsin held that where defendants signed their names under the printed form "Protest waived," "Payment guaranteed," they were indorsers. Wallrich Land & Lumber Co. v. Ebenreiter, 216 Wis 140, 256 NW 773.

In the case of Jaronko v. Czerwinski, 166 Atl 388, 117 Conn 15, the Supreme Court of Errors of that state held that signers of a guaranty of payment with a waiver of presentment, protest, and notice of dishonor are indorsers with enlarged liability.

Section 41–0502 NDRC 1943 Neg. Inst. defines a holder in due course: "A holder in due course is a holder who has taken the instrument under the following conditions:

1. That it is complete and regular upon its face;

2. That he became the holder of it before it was overdue, and

without notice that it had been previously dishonored, if such was the fact;

3. That he took it in good faith and for value;

4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

When the holder of a negotiable instrument has established that he purchased same before maturity for a valuable consideration it is presumed that he is a holder in due course. First National Bank v. Bailey, 54 ND 534, 210 NW 26; Johanna v. Lennon, 32 ND 71, 155 NW 686.

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." 41-0506 NDRC 1943.

"To defeat recovery on a negotiable promissory note purchased before maturity, where the defense is fraud in the inception of the note or negotiation in breach of faith, it must be shown that the indorsee had actual knowledge of the infirmity or defect, or knowledge of such facts as to amount to bad faith." American Nat. Bank v. Lundy, 21 ND 167, 129 NW 99.

"Under the Wisconsin statute notice of facts tending to put a cautious buyer upon inquiry will not defeat the title of a holder of negotiable paper, if in truth there was neither actual knowledge of an infirmity nor conscious joinder in a fraud." Marine Nat. Exchange Bank v. Kalt-Zimmers Mfg. Co. 293 US 357, 55 S Ct 226, 228, 79 L ed 427. To the same effect see Rosenberg v. Gilson, 49 NW2d 417, 259 Wis 434.

The endorsement by Green to Grasswick was regular in form and made the note payable to Grasswick's order. Grasswick had the right to transfer it by endorsement to the plaintiff. The plaintiff was not bound by any prior agreement between Green and Grasswick to which he was not a party and of which he had no notice. Under the undisputed facts and the law the plaintiff is a holder in due course for value before maturity and is enti-

928

tled to judgment as prayed for in the complaint. · The trial court correctly denied defendant's offer of proof.

The judgment is affirmed.

MORRIS, Ch. J., and CHRISTIANSON, GRIMSON and BURKE, JJ., concur.